WINDHORST, J. | Appellant, Emile Larson, seeks review of the trial court’s April 29, 2016 judgment[1] granting Rochelle Larson interim spousal support and an increase in child support and denying Mr. Larson interim spousal support. For the reasons that follow, we amend the judgment and affirm as amended. Procedural Background Mr. Larson and Ms. Larson were married on June 26, 1999. On the same day, the parties executed a pre-nuptial agreement wherein the parties agreed they would remain separate in property and they renounced the establishment of a community of acquets and gains between them. Ms. Larson filed a petition for divorce on February 21, 2013, requesting child support and interim spousal support, and in due course, final spousal support. On February 26, 2013, Mr. Larson filed an answer and reconventional demand for divorce, requesting interim spousal support. On May 1, 2013, the hearing officer recommended that Mr. Larson pay Ms. Larson child support in the amount of $2,066.00 per month, effective February 21, 2013, and ordered Mr. Larson to pay health insurance, and 78% of uncovered extraordinary medicals, school tuition, registration, mandatory fees, and extracurricular activities for the children. The hearing officer further recommended that once the parties obtained shared custody (50/50), Mr. Larson’s child support obligation would be reduced to $1,091.00 per month, plus the 78% uncovered extraordinary medicals, school tuition, registration, mandatory fees, añd extracurricular activities for the children. Mr. Larson objected to the award of child support to Ms. Larson. Ms. Larson objected to the amount of child support. |2On June 3, 2013, the hearing officer recommended that Mr. Larson pay Ms. Larson interim spousal support in the amount of $3,241.00 per month, effective February 21, 2013, and ordered Mr. Larson to maintain health insurance on Ms. Larson. The hearing officer further recommended an increase in the interim spousal support award, effective June 16, 2013, to the amount of $3,728.00 per month and ordered Mr. Larson to maintain health insurance, on Ms. Larson. On June 5, 2013, both Mr. Larson and Ms. Larson objected to the amount of the interim spousal support award. On September 10, 2013, Ms. Larson filed a supplemental and amending, petition wherein she formally withdrew her request for final spousal support “at this time.” Mr. Larson filed a rule to reduce child support on January 9, 2014, stating that his employment with Stantec Consulting Services Inc. (Stantec) was terminated through no fault of his own. Mr. Larson contends that the elimination of his position resulted in a material change in cir-. cumstances warranting a reduction in his child support obligation. On August 4, 2014, Ms. Larson filed a motion to reset her rules for contempt and objections. Within that motion, Ms. Larson also requested an increase in child sup-' port. Ms. Larson contended that Mr. Larson had obtained new employment since the last time the. parties were before the hearing officer.[2] She also' claimed that upon information and belief, he was earning significantly more than previously and therefore had more disposable income to allocate to his child support obligation. Judgment for divorce was granted on June 26, 2014. The parties’ numerous objections to hearing officer recommendations and motions were set and reset | .¡several times due to continuances, the recusal of two trial court judges, and the' transfer to and return from juvenile court of the parties’ spousal and child support objections and motions. Trial on all of the parties’ outstanding motions and objections was set and heard over four days on August 26, 2015, August 27, 2015, January 11,2016 and January 20, 2016. The trial court awarded Ms. Larson interim spousal support for the period beginning May 1,2013 and ending December 26, 2014. Ms. Larson was awarded the amount of $3,008.00 per month for the period beginning May 1, 2013 and ending June 16, 2013. For the period beginning June 17, 2013 and ending December 26, 2014, Ms. Larson was awarded the amount of $3,638.00 per month. The trial court made the awards executory and Mr. Larson- received a credit in the amount of $12,501.41 for all previous payments made, as stipulated by the parties. The trial court denied Mx*. Larson’s request for spousal support. The trial court also granted Mr. Larson’s rule to reduce child support, retroactive to the date of filing, January 1, 2014, and .reduced the amount to $401.00 per month. The trial court further granted Ms.’Larson’s rule to increase child support, retroactive to the date of filing, August 8, 2014, and increased the amount to $1,081.00 per month.[3] Applicable Law Spousal Support In a proceeding for divorce, the court may award a party an interim spousal support allowance based on the needs of that party, the. ability of the other party to pay, and the standard of living of the parties during the marriage. La. C.C. art. Ill and 113. A spouse’s right to claim interim spousal support is based on the statutorily imposed, duty on spouses to support each other during marriage. La. C.C. art. 98; Hall v. Hall, 08-706 (La. App. 5 Cir. 02/10/09), 4 So.3d 254, 257, writ denied, 09-0812 (La. 05/29/09), 9 So.3d 166; McAlpine v. McAlpine, 94-1594 (La. 09/05/96), 679 So.2d 85, 90. Thus, interim spousal support provides for the spouse who does not have sufficient income for his or her maintenance during the period of separation. Short v. Short, 11-1084 (La. App. 5 Cir. 05/22/12), 96 So.3d 552, 556. Interim spousal support is designed to assist the claimant spouse in sustaining the same style or standard of living that he or she enjoyed while residing with the other spouse, pending the litigation of the divorce. St. Pierre v. St. Pierre, 09-1124 (La. App. 5 Cir. 05/25/10), 42 So.3d 426, 428-429; Dufresne v. Dufresne, 08-215 (La. App. 09/16/08), 992 So.2d 579, 588, writ denied, 08-2843 (La. 12/17/08), 996 So.2d 1123. The needs of the; claimant spouse is defined as “the total, amount sufficient to maintain her in a standard of living comparable to that enjoyed by her prior to the separation limited only by the husband’s ability to pay.” Hall, 4 So.3d at 257. The trial court has wide discretion in imputing income to a claimant spouse where that spouse’s income is uncertain. Molony v. Harris, 09-1529 (La. App. 4 Cir. 10/14/10), 51 So.3d 752, 757; Kirkpatrick v. Kirkpatrick, 41,851 (La. App. 2 Cir. 01/24/07), 948 So.2d 390, 394-395. Interim spousal support is awarded retroactive to the date of the petition for spousal support. La. R.S. 9:310 A; Loftice v. Loftice, 07-1741 (La. App. 1 Cir. 03/26/08), 985 So.2d 204, 210. However, if the court “finds good cause for not making the award retroactive, the court may fix the date such award shall Recome due.” La. R.S. 9:310 C. The burden is on the defendant-in-rule to show good cause for not making the award retroactive. Broussard v. Broussard, 532 So.2d 281, 283 (La. App. 3 Cir. 1988). Interim spousal support “shall terminate upon the rendition of a judgment of divorce.” La,. C.C. art. 113 A. If a claim for final spousal support is pending at the time of the rendition of the judgment of divorce, the interim spousal support award shall thereafter terminate upon rendition of a judgment awarding or denying final spousal support or one hundred eighty days from the rendition' of judgment of divorce, whichever occurs first. La. C.C. art. 113 B. | r,The purpose of interim spousal support is to maintain the status quo without unnecessary economic dislocation until a final determination of support can be made. Hall, 4 So.3d at 257. The burden is on the claimant to prove his or her entitlement to interim spousal support. Short, 96 So.3d at 557. A trial court is afforded much discretion in- determining an award of interim spousal support, and that award may not be disturbed absent a clear abuse of discretion. Lowentritt v. Lowentritt, 11-703 (La. App. 5 Cir. 03/13/12), 90 So.3d 1081, 1086; McFall v. Armstrong, 10-181 (La. App. 5 Cir. 10/12/10), 50 So.3d 904, 907. As to interim spousal support specifically, an “abuse, of discretion will not be found if the record supports the trial court’s conclusions about the means of the payor spouse and his or her ability to pay.” Short, 96 So.3d at 556 (citing Lambert v. Lambert, 06-2399 (La. App. 1 Cir. 03/23/07), 960 So.2d 921, 928). Factual findings shall not be set aside absent manifest error. Rosell v. ESCO, 549 So.2d 840, 844 (La. 1989). To substantiate reversal, the appellate court must find from the record that there is no reasonable factual basis for the finding of the trial court and that the record establishes that the finding is clearly wrong or manifestly erroneous. Mart v. Hill, 505 So.2d 1120, 1127 (La. 1987). Child Support A trial court’s order of child support is entitled to great weight. Hall v. Hall, 11-60 (La. App. 5 Cir. 05/24/11), 67 So.3d 635, 638, writ denied, 11-1752 (La. 10/14/11), 74 So.3d 214. An appellate court will not disturb a child support order unless there is an abuse of discretion or manifest error. Id.; State, D.S.S. ex rel. D.F. v. L.T., 05-1965 (La. 07/06/06), 934 So.2d 687, 690. An award of child support may be modified if the circumstances of the child or of either parent materially change, La. C.C. art. 142. An award for child.support shall not. be modified unless the-party seeking the modification shows a material | -(¡change in circumstances of one of the parties between the time of the previous award and the time of the rule for modification of the award. R.S. 9:311 A(1). The determination of whether a material change of circumstances has occurred is a question of fact and will not be disturbed absent manifest error. Hall, 67 So.3d at 639; Hernandez v. Hernandez, 05-1342 (La. App. 1 Cir. 06/09/06), 938 So.2d 1019, 1024-1025. The trial court is in a better position to observe the demeanor of the witnesses and rule on their credibility. Hall, 67 So.3d at 639. Discussion In his first three assignments of error, Mr. Larson contends that the trial- court abused-its discretion and was manifestly erroneous in 1) finding Ms. Larson was in need of and entitled to interim spousal support because she is the benefactor of several trusts and her income and assets were greater than- his; 2) refusing to attribute to Ms. Larson -her half of Mr. Larson’s retirement benefit pursuant to the pre-nuptial agreement in calculating Ms. Larson’s income; and 3) ordering Mr. Larson to pay interim spousal support past the date of divorce when no rule for final spousal support was pending. . Mr. Larson argues .that Ms. ' Larson gave eonflicting.responses to discovery regarding several trusts and repeatedly refused to provide all documents necessary to determine her income. He contends that Ms. Larson filtered hundreds of thousands of dollars through her checking account and could not provide any explanation for the money. Mr. Larson claims" that Ms. Larson also owns a company named Con-lumat, Ameritrade accounts, a Raymond James account, Exxon stock, Arthur Peif-fer Family L.P., leases for oil in Texas, rental property in Colorado, was employed full time and had an interest in a portion of his pension. Thus, he argues that that Ms. Larson’s income was greater than his and she was not in need of interim spousal support. Mr. Larson also argues that the parties agreed that Ms. Larson was entitled to a portion of his retirement benefits pursuant to the pre-nuptial agreement Land that portion would come from his survivor benefits. Because Ms. Larson has refused to sign the QDRO that would give Ms. Larson her portion, Mr. Larson argues that Ms. Larson’s portion should be counted as income for Ms. Larson. He further argues that he was ordered to pay interim spousal support beyond the date of divorce when no rule for final support was pending. At trial, Mr. Larson attempted to show that Ms. Larson has sufficient funds and is not in need of support. On appeal, we cannot find that the trial court was clearly wrong or manifestly erroneous in its-conclusion. The income and expenses affidavit submitted by Ms. Larson showed that her expenses were $6,058.00 a month and the hearing officer imputed income to Ms. Larson in the .amount of $1,535,00 per month. Bruce Miller, qualified as an expert in the areas of trusts and taxation, testified extensively that after .reviewing Ms. Larson’s trusts and tax documents, he concluded that she did not have an interest in any trust.[4] Mr. Miller also produced a letter from David P. Chaney, CPA, wherein Mr. Chaney explained that he prepared the Arthur Peiffer Family L.P. tax returns from 2003 to 2014. Mr. Chaney stated that he was given documentation in 2003 that referenced one of the trusts (“Heritage”) even though those trusts never came into existence. Mr. Chaney’s letter states that he erroneously continued to prepare the Arthur Peiffer Family L.P. tax returns referencing the “Heritage” trusts which generated confusion. Stephanie Halphen, accepted as an expert forensic CPA, testified that she analyzed Ms. Larson’s investments at Raymond James, the Conlumat checking account statements and the tax returns for the relevant time period. She also ordered IRS transcripts that would have shown if any trusts were reporting income for Ms. Larson and there were none. Ms. Halphen prepared a summary of Ms. Larson’s average monthly income. Ms. Halphen testified extensively regarding Ms. Larson’s | ^accounts and investments and concluded that $1,535.00, the amount of income imputed to Ms. Larson, was reasonable based on her calculations of Ms. Larson’s income.[5] Ms. Halphen also explained that the large deposits of funds in Ms. Larson’s checking account could be accounted for and were from the sale of Ms. Larson’s personal property to pay bills, repayment of a loan by Ms. Larson’s brother, the sale of Ms. Larson’s Mercedes, a settlement check from an insurance company in May 2013, and another settlement check for a lawsuit against her step-daughter in December 2013 for $15,627.62, She testified that these funds were “non-reoecurring funds” and they did not count as income. Ms. Halphen further testified that Ms. Larson carries a margin loan on her -Raymond James account wherein she is required to pay interest. Moreover, Ms. Halphen testified that after reviewing Mr. Larson’s financial records for a three year period, Mr. Larson had average monthly deposits of $10,752.36.- The income and expense affidavit submitted by Mr. Larson provided that his average net monthly income was $10,785.27. After a four-day trial, the trial court awarded Ms. Larson interim spousal support for the period beginning May 1, 2013 and ending December 26, 2014. Ms. Larson was awarded $3,008.00 per month for the period beginning May 1, 2013 and ending June 16, 2013, and awarded $3,638.00 per month for the period beginning June 17, 2013 and ending December 26, 2014. The awards were made executory and Mr. Larson received credit in the amount of $12,501.41 for all previous payments made, as stipulated at trial by the parties. There was no showing that the trial court abused its discretion in awarding Ms. Larson interim spousal support. Despite Mr. Larson’s assertions to the contrary, the record supports the trial court’s conclusions that Ms. Larson was in need of support and Mr. Larson had the means and the ability to pay spousal support in the | aamounts awarded by the trial court. There is no evidence in the record to support Mr. Larson’s argument that Ms. Larson is a “multimillionaire.” There is a reasonable factual basis for the findings of the trial court and thus, the trial court was not wrong or manifestly erroneous. We also find that the trial court did not abuse its discretion and it was not manifestly erroneous in declining to impute Ms. Larson’s portion of Mr. Larson’s'monthly retirement benefits as income to Ms. Larson. While it is undisputed that Ms. Larson is entitled to her portion of Mr. Larson’s monthly retirement benefits, uneontradict-ed testimony at trial established that Mr. Larson received and continues to receive all of the funds from his monthly retirement benefits. Ms. Larson has not received any funds from Mr. Larson’s monthly retirement benefits. Thus, the trial court properly determined that the monthly retirement funds received and used by Mr. Larson were income properly attributable to Mr. Larson. See Loftice, 985 So.2d at 209. However, we do find that the trial court abused its discretion and was manifestly erroneous in awarding interim spousal support in the amount of $3,638.00 per month for the period beginning June 27, 2014 and ending December 26, 2014. Ms. Larson did not have a motion for final spousal support pending at the judgment of divorce, so her interim' spousal support therefore terminated at the rendition of the judgment of divorce, June 26, 2014. Accordingly, Ms. Larson’s interim spousal support terminated on June 26, 2014, arid that portion of the judgment is amended to reflect that Ms. Larson is awarded interim spousal support for the period beginning May 1, 2013 and ending June 26, 2014. In his fourth assignment of error, Mr. Larson contends that the trial- court abused its discretion and was manifestly erroneous in not awarding him interim spousal support. Mr. Larson argues that his hearing officer affidavit showed a deficit of over $3,000.00 between his earnings and expenditures. He claims that the | inextravagant iifestyle that existed during the marriage was provided for by Ms. Larson. There is nothing in the record that supports Mr. Larson’s contention that he is in need of interim spousal support, or that Ms. Larson has the ability to pay interim spousal support. The trial court did not abuse its discretion in declining to award Mr. Larson interim spousal support. Because there was a reasonable factual basis for finding that Mr. Larson,was not entitled to- interim spousal support, the trial court’s finding was not manifestly erroneous. Accordingly, this argument is without merit. in his fifth assignment of error, Mr. Larson contends that the trial court abused its discretion and was manifestly erroneous in simultaneously granting his rule to reduce child support and granting Ms. Larson’s motion to increase child support because Ms. Larson’s motion to increase child support was not pending before the trial court.[6] Based on the record, the trial court intended to set all outstanding objections and motions on its docket, including the motion to increase child support. The history and nature of this case is complicated. The parties filed numerous pleadings, objections, and motions which were set and continuously continued. The continuances were due in part to the numerous child and spousal support issues that were transferred to the juvenile court and subsequently returned to the trial court. Additionally, two prior trial judges recused themselves from this case which caused the objections and motions to be reset several times. Once the matter was transferred to the third trial judge, the record establishes that the trial court wanted to hear all of the outstanding motions and objections, on May 5 and May 6, 2016. For reasons ^unknown, all of those matters were continued to August 26, 2016. Therefore, Ms. Larson’s motion to increase child support was properly on the trial court’s docket. Furthermore, the trial court did not abuse its discretion and was not manifestly erroneous in granting both Ms. Larson’s motion to increase child support and Mr. Larson’s rule to reduce child support obligation. Mr. Larson’s rule to reduce child support was filed January 1, 2014, when he was unemployed due to no fault of his own. The trial court granted Mr. Larson’s rule to reduce child support, retroactive to January 1, 2014. Ms. Larson filed her. motion to increase child support on August 4, 2014, alleging that a material change in circumstance had occurred when Mr.- Larson had obtained new employment since the last hearing officer conference. The undisputed testimony showed that Mr. Larson lost his job with Stantec in January 2014, and was unemployed for 10 weeks. Mr. Larson obtained new employment on April 7, 2014 and began making $78,000.00 per year, plus his monthly retirement benefits. Thus, Ms. Larson established a material change in circumstance which' supports the trial court’s granting of Ms. Larson’s motion to increase child support. Accordingly, the trial court did not abuse its discretion and was not manifestly erroneous in awarding Ms. Larson an increase in child support. However, the award was incorrectly made retroactive to August 8, 2014,' Ms. Larson filed her motion to increase child support on August 4, 2014. Therefore, that portion of the judgment is amended to reflect that the award of child support to Ms. Larson is retroactive to August 4,2014. ^Conclusion For the reasons stated above,,the judgment is amended to reflect that Ms. Larson is awarded interim spousal support for the period beginning May 1, 2013 and ending June 26, 2014, and to reflect that the award of child support to Ms. Larson is retroactive to August 4,2014, and affirmed as amended. JUDGMENT AMENDED AND AFFIRMED AS AMENDED . On February 15, 2017, this Court found the April 29, 2016 judgment to be deficient because it lacked the requisite decretal language, and the trial court was ordered to amend its judgment, The trial court signed its amended judgment on March 7, 2017, and supplemented the record on review. . For reasons beyond the control of the parties, Mr. Larson’s rule to reduce child support was not ruled on by the time Ms, Larson filed her motion to increase child support. Rather, both motions were heard at the same time, approximately two years after they were filed. In the interest of judicial economy, we find the trial court properly considered Ms. Larson’s motion to increase child support to be filed in response to Mr. Larson’s rule to reduce child support. Mr. Larson was unemployed at the time of his request for a reduction in his child support obligation and had obtained new employment at the time of Ms. Larson’s motion to' increase child support. . The original judgment and the amended judgment ruled on other mptions that were not appealed. . Mr. Miller also wrote a letter dated August 1, 2014, wherein he addressed each trust and concluded that Ms. Larson did not have an interest in any trust. . According' to the summary, Ms. Larson's average net-monthly income based on her bank statements was $1,303.00 a month and was $1,841.52 based on average net monthly income' from. tax returns for the period of - 2012 through 2014. . Mr. Larson also argues that the trial court erred because it did not set a value for the reduction and increase of child support and did not attribute an income amount to either party on the respective motions. Prior to submission, this Court ordered the trial court to submit an amended judgment to address deficiencies, in the judgment, including Mr. Larson’s argument regarding lack of value set. The trial court’s amended judgment sets the value for the reduction and increase of child support and attached documents calculating each respective motion which included the amount of income attributed to each party. We therefore decline to address this issue.